

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2005

# Lawrence Twp Bd Ed v. New Jersey

Precedential or Non-Precedential: Precedential

Docket No. 04-3637

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Lawrence Twp Bd Ed v. New Jersey" (2005). *2005 Decisions.* Paper 629.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/629

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3637

———

LAWRENCE TOWNSHIP BOARD OF EDUCATION,
Appellant

v.

STATE OF NEW JERSEY

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 03-cv-04073
District Judge:  The Honorable Stanley R. Chesler

———

Argued:  June 29, 2005
Before: ROTH, RENDELL, and BARRY, <u>Circuit Judges</u>

(Opinion filed August 2, 2005)

———

James F. Schwerin, Esq. (Argued)
Parker, McCay & Criscuolo
1009 Lenox Drive
Building 4 East, Suite 102A
Lawrenceville, NJ 08648

<u>Counsel for Appellant</u>

Michael C. Walters, Esq. (Argued)
Office of the Attorney General of
New Jersey
Division of Law
P.O. Box 112
25 Market Street
Trenton, NJ   08625

Counsel for Appellee

---

OPINION OF THE COURT

---

BARRY, Circuit Judge

E.E.,[1] a child whose family resides in Lawrence Township, New Jersey, suffers from diabetes and autism.  The parties agree that E.E. is "disabled" as that term is defined in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82.  E.E.'s parents registered her with the New Jersey Division of Developmental Disabilities ("DDD"), a division of the State Department of Human Services.  The DDD is charged with providing specialized services "directed toward the alleviation of a developmental disability or toward the social, personal, physical or economic habilitation or rehabilitation of a person with a developmental disability."  N.J. Stat. Ann. § 30:6D-25.

At the time the complaint was filed, E.E. was a day student at the Eden Institute, a school which specializes in addressing the needs of autistic children.  Among other problems, E.E.'s condition causes her to engage in self-injurious behavior.  Although this behavior could be controlled while E.E.

---

[1]To preserve the child's privacy, she and her family are referred to in all court documents only by their initials.

was at the Institute, it could not be controlled at home, and E.E. was, therefore, a danger to herself when outside the closely monitored environment of the school. In order to address this situation, E.E.'s parents and the Lawrence Township School District Board of Education ("Lawrence Township") agreed that E.E. should be placed in a residential facility where she can receive proper care at all times, and specifically agreed that she should be placed at Allies, Inc., a facility in Hamilton, New Jersey. We were advised at oral argument that she is now there.

E.E.'s parents requested that DDD fund this placement, but, for reasons not relevant here, DDD refused. Instead, E.E. was placed on a DDD waiting list of persons eligible for residential placement, and, as of September 26, 2002, E.E. was number 231 on that list. Lawrence Township, which is financing E.E.'s placement, a placement for which it paid $235,367 for the 2003-2004 school year, filed this action, alleging that, under the IDEA, the State of New Jersey was obligated to assume the cost of the placement.[2] The District Court concluded that Lawrence Township does not have a private right of action under the IDEA, and granted New Jersey's motion to dismiss. This appeal followed.

## I.

The IDEA authorizes federal funding for state and local agencies to provide for the educational needs of disabled children. Every state educational agency ("SEA") or local educational agency ("LEA") which receives funding under the IDEA must provide disabled children with a "free appropriate public education." ("FAPE"). *See* 20 U.S.C. §1412(a)(1) (2003). Federal funding under the IDEA is "contingent on state compliance with its array of substantive and procedural requirements." *Beth V. v. Carroll*, 87 F.3d 80, 82 (3d Cir. 1996) (citing 20 U.S.C. § 1412). In New Jersey, the LEAs, including Lawrence Township, are vested with the responsibility for

---

[2]The E.s never filed a complaint against Lawrence Township, and are not parties to the instant litigation.

3

providing and administering a FAPE, in accordance with the requirements of the IDEA. *See* N.J Admin. Code § 6A:14-1.1(d).

At issue here are some of the procedural safeguards set forth in the IDEA. As an initial matter, we note that certain provisions of the IDEA were altered by legislation in December, 2004, effective July 1, 2005. *See* Pub. L. 108-446, Title I, § 101, 118 Stat. 2647. Nonetheless, amendments to the IDEA have prospective application only, and neither party argues that the new amendments should apply to this case. Therefore, the provisions in effect at the time the complaint was filed in 2003 will be applied here. *See Tucker v. Calloway County Bd. of Ed.,* 136 F.3d 495, 501 (6th Cir. 1998) (citing *Fowler v. Unified School District No. 259*, 128 F.3d 1431, 1436 (10th Cir. 1997)); *Heather S. v. Wisconsin*, 125 F.3d 1045, 1062 (7th Cir. 1997).

Among those provisions is section 1412 of the IDEA, which states, in relevant part, that "[t]he state educational agency is responsible for ensuring that...the requirements of this subchapter are met." 20 U.S.C. § 1412(a)(11)(A)(i) (2003). Section 1415(b) provides, in relevant part, that "the procedures required by this section shall include...an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6) (2003). Section 1415(i)(2) provides that any " party aggrieved" may bring a civil action in federal district court or state court.

Relying upon these provisions, Lawrence Township argues that the funding for E.E.'s placement at Allies is "a matter relating to. . .the provision of" E.E.'s FAPE, and, therefore, falls within the framework of section 1415(b)(6). Moreover, because the states are ultimately responsible for fulfilling the requirements of the IDEA, the Township argues that it has the right to bring an action under the IDEA to force

New Jersey to fund E.E.'s placement.[3]  New Jersey argues that Lawrence Township lacks standing because, as an LEA, it has no private right of action under the IDEA.

## II.

Federal courts are courts of limited jurisdiction, and may hear actions only where authorized to do so by Congress.  U.S. Const. Art. III, § 1.  The Supreme Court of the United States has made it quite clear that

> "private rights of action to enforce federal law must be created by Congress.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.  Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."

*Alexander v. Sandoval,* 532 U.S. 275, 286-87 (2001) (internal citations omitted).

Section 1415(a) of the IDEA, entitled "establishment of procedures," provides that procedures shall be established and maintained "in accordance with this section <u>to ensure that children with disabilities and their parents</u> are guaranteed procedural safeguards with respect to the provision of [a FAPE]."  20 U.S.C. § 1415(a) (2003) (emphasis added).  Similarly, section 1412(a)(6), which is entitled "procedural safeguards," provides that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section [1415]."  20 U.S.C. § 1412(a)(6)(A) (2003).

---

[3]Congress has abrogated sovereign immunity for claims under the IDEA.  *See* 20 U.S.C. § 1403 (2003).

This language strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents. Indeed, section 1415(b), which sets forth the types of procedures required, limits most relief under those procedures to the parents of a disabled child.

Nonetheless, section 1415(b)(6), the provision upon which Lawrence Township relies, contains no such limitation. Thus, the Township argues that the broader language of section 1415(b)(6) – "an opportunity to present complaints with respect to any matter..." – clearly demonstrates that Congress intended to permit persons or entities other than parents and children to bring an action under the IDEA.[4] We disagree. While section 1415(b)(6) is crafted more broadly than other subsections, this fact alone does not indicate an intent to permit a private right of action by an LEA against a state. Instead, when examined in the context of the IDEA as a whole, the language of section 1415(b)(6) is at best ambiguous.

For similar reasons, Lawrence Township has no implied right of action under the IDEA. As the Supreme Court has instructed, "'unless [the] congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Thompson v. Thompson,* 484 U.S. 174, 179 (1988) (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94 (1981)). As the District Court noted, "this case is not about the child's educational needs, but rather the Township's fiscal ones." App. 25. A budgetary dispute between local and state agencies is simply not among the private actions contemplated by the IDEA, and is traditionally the type of dispute left to state and local authorities.

In this regard, it is significant to note that the cases relied

---

[4]Although Lawrence Township initially argued that it has both an express and an implied right of action under the IDEA, at oral argument counsel for the Township conceded that it has no express right of action.

upon by Lawrence Township, cases in which courts have held that a private right of action existed, were nearly all initiated by the parents of a disabled child. *See, e.g., Beth V*., 87 F.3d 80; *John T. v. Iowa Dep't of Ed.*, 258 F.3d 860, 862 (8th Cir. 2001); *Gadsby v. Grasmick*, 109 F.3d 940, 948 (4th Cir. 1997); *Todd D. v. Andrews*, 933 F.2d 1576, 1579 (11th Cir. 1991); *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 414 (1st Cir. 1985). We do not disagree with the proposition that the parents of a disabled child have a private right of action. Those cases, however, do not even discuss, much less decide, whether an LEA has a similar right of action against the state, the issue before us. Although *St. Tammany Parrish School Board v. Louisiana*, 142 F.3d 776 (5th Cir. 1998), did involve an action brought by an LEA against Louisiana, it was in the context of litigation filed by the parents against both the LEA and the state. Thus, the LEA in *St. Tammany* merely sought the imposition of interim liability, as between itself and the state, pending the ultimate outcome of the underlying litigation. The court in *St. Tammany* never addressed the issue of whether an LEA has a private right of action under the IDEA.

Those courts that have addressed the issue have held against the LEA. *See, e.g., Andrews v. Ledbetter*, 880 F.2d 1287, 1290 (11th Cir. 1989) ("nothing indicates that Congress intended to grant an LEA statutory standing to bring suit to compel a state agency to fulfill its statutory duties"); *Board of Ed. of Oak Park v. Kelly E.*, 207 F.3d 931, 935 (7th Cir. 2000) ("nothing in this subsection authorizes awards of financial relief in favor of local educational officials"). The Court of Appeals for the Second Circuit was recently presented with a factual setting virtually identical to that in this case where a county agency was attempting to bring an action against the State of New York. In rejecting this attempt, the Court reasoned as follows:

> Since Congress expressly provided a private right
> of action in favor of certain groups, specifically,
> any party aggrieved by particular findings or a
> decision rendered under subsection 1415, *see* 20
> U.S.C. § 1415(i)(2)(A), but did not expressly
> provide a private right of action in favor of a

7

county, educational agency or any other entity seeking to challenge the lack of an interagency agreement required by § 1412(a)(12), we find it extremely unlikely that Congress intended to do so.

*County of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002). We find this reasoning both persuasive and consistent with our own precedent. Lawrence Township has neither an express nor implied right of action under the IDEA.[5]

## III.

The judgment of the District Court will be affirmed.

---

[5]While there is some dispute as to whether an LEA may cross-claim against a state agency where both are sued by the parents, that issue is not presented here, and we do not address it. *Compare Andrews*, 880 F.2d at 1291 (holding that an LEA may not bring an action against the state, but noting that, in a suit brought by parents, "it may be that the LEA may defend by asserting that the state education agency is primarily and ultimately responsible for the [IDEA]'s implementation"); *with Oak Park,* 207 F.3d at 937 ("[a] local educational agency that has received its share of the federal appropriation must provide for services out of that share; it cannot collect more from the state by way of contribution).