**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAKE WASHINGTON SCHOOL
DISTRICT NO. 414, a municipal
corporation,

*Plaintiff-Appellant,*

v.

OFFICE OF SUPERINTENDENT OF
PUBLIC INSTRUCTION, an agency of
the State of Washington;
WASHINGTON STATE OFFICE OF
ADMINISTRATIVE HEARINGS, an
agency of the State of
Washington,

*Defendants-Appellees,*

S.G. AND A.G.,
*Defendant-Intervenor-Appellee.*

No. 09-35472

D.C. No.
3:09-cv-05009-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
October 8, 2010—Seattle, Washington

Filed February 22, 2011

2755

Before: Sidney R. Thomas and Milan D. Smith, Jr.,
Circuit Judges, and Raner C. Collins, District Judge.*

Opinion by Judge Thomas

---

*The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

## COUNSEL

James J. Dionne and Lynette M. Baisch, Seattle Washington, for the appellant.

Dierk J. Meierbachtol and Kyle J. Crews, Office of the Attorney General of the State of Washington, Olympia, Washington, for the appellee.

Katherine A. George, Seattle, Washington, for the intervenors.

## OPINION

THOMAS, Circuit Judge:

Shakespeare warned us to "defer no time, delays have dangerous ends."[1] Perhaps Lake Washington School District no. 414 ("School District") took the Bard's advice a bit too seriously. When a state administrative law judge granted a short continuance, the School District immediately filed this action seeking to enjoin the State of Washington from granting continuances greater than 45 days in any administrative proceedings conducted pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

The district court held that the School District lacked standing and dismissed the complaint with prejudice. We affirm.

I

The IDEA assures that all children with disabilities receive a "free appropriate public education" ("FAPE") through individualized education programs ("IEP"). *See L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citing 20 U.S.C. § 1400(d)(1)(A)). Congress conditioned federal funding upon state compliance with the statute's "extensive substantive and procedural requirements." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). The IDEA's "core" is the "cooperative process that it establishes between parents and schools," the "central vehicle" of which is the development of an IEP. *Schaffer v. Weast*, 546 U.S. 49, 53 (2005).

A party objecting to an IEP may invoke the IDEA's "procedural safeguards." *See* 20 U.S.C. § 1415; *see also Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007) (summarizing procedures). These safeguards include the opportu-

---

[1]William Shakespeare, *Henry VI: Part I*, act 3, sc. 2.

nity for "any party to present a complaint" concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). A complaint initiates a process of review that can include, in relevant part, a preliminary meeting (§ 1415(f)(1)(B)(i)) and an impartial due process hearing conducted by the state or local educational agency (§ 1415(f)(1)(A)). Once the state educational agency has reached a decision, an aggrieved party may sue in federal court. *Winkelman*, 550 U.S. at 526 (citing 20 U.S.C. § 1415(i)(2)(A)).

In the state of Washington, the Office of Superintendent of Public Instruction is the primary agency charged with overseeing K-12 education. *See* Wash. Rev. Code § 28A.155.090. By regulation, it delegated its duty to conduct special education administrative hearings to the Office of Administrative Hearings.[2] Wash. Admin. Code § 392-172A-05095.

The present controversy began when parents of S.G. ("Parents") filed a due process complaint against the School District, alleging that their child's educational program violated the IDEA. The School District, in turn, filed its own request for a due process hearing, seeking a determination that its evaluation of the child was appropriate. The Office of Administrative Hearings assigned both matters to an ALJ, who consolidated the complaints and set a prehearing conference for December 31, 2008 and a hearing for January 14, 2009.

During the prehearing conference, counsel for Parents requested a continuance of the hearing. According to the School District, counsel's reasons for the request were her vacation in January and her unavailability in February, March,

---

[2]Both the Office of Superintendent of Public Instruction and the Office of Administrative Hearings are defendants in this case, and we will refer to them collectively as "the State."

and April due to other special education hearings. The School District objected, on the grounds that the IDEA requires a decision be issued within 45 days of the expiration of the 30-day resolution period. The ALJ granted the continuance "[w]ithout justification," the School District alleges.

In response to the continuance, the School District immediately filed an action in federal district court for a writ of prohibition and a temporary restraining order requiring the state agency to proceed with the initial 45-day timeline. The district court denied the motion and issued a minute order notifying the School District that its case would be dismissed if the District did not advise the court that it was seeking other relief. The School District amended its complaint, seeking (1) a declaratory judgment that the agency's practice of granting extensions without a showing of good cause violates the IDEA and federal and state regulations and (2) a permanent injunction against the State granting extensions beyond 45 days in future IDEA hearings. The State, joined by the Parents, moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and 12(b)(6) for failure to state a claim.

The district court granted the motion to dismiss with prejudice. The School District timely appeals. We review the district court's dismissal *de novo*, and we may affirm on any basis fairly supported by the record. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979 (9th Cir. 2007).

II

Standing is both a constitutional and statutory principle. Where a claim is founded on a statute, "[i]t is not enough . . . for a plaintiff to satisfy the constitutional standing requirements of Article III." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004). We must also consider "whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." *Id.* In this case, we

must determine whether the IDEA confers upon a school district the right to sue a state agency for its alleged noncompliance with IDEA procedures.

**[1]** Congress's intent in providing IDEA procedural protections is quite clear. Section 1415, which contains the procedural safeguards at issue here, states that the procedures shall be established and maintained "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a). As the Sixth Circuit observed: "Simply put, the procedural safeguards articulated in § 1415 were enacted so that parents with disabled children could enforce their child's right to a FAPE." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 629 (6th Cir. 2010). Nothing in the text of the IDEA expressly provides local educational agencies the right to bring an action against a state educational agency for its alleged noncompliance with procedural requirements. As the Third Circuit noted, the statement of purpose "strongly suggests that Congress intended to provide a provide a private right of action only to disabled children and their parents." *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005).

The statutory private right of action under IDEA contains further limitations. It states:

> Any party aggrieved by the findings and decision made under [subsections for due process hearings and alternative educational placement] who does not have the right to an appeal under [subsection for state review of local hearings], and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action *with respect to the complaint presented* pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a dis-

trict court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A) (emphasis and alterations added).

The scope of the civil action authorized under this section is limited by the phrase "with respect to a complaint presented pursuant to this section." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1464-66 (9th Cir. 1996). The scope of a "complaint presented" is defined in section 1415(b)(6)(A), which provides "[a]n opportunity for any party to present a complaint . . . with respect to any matter *relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child.*" 20 U.S.C. § 1415(b)(6)(A) (emphasis added). In *County of San Diego*, therefore, we concluded that the county could not contest a child's status as "seriously emotionally disturbed," because the child's complaint in her administrative hearing concerned only the right to residential placement. 93 F.3d at 1465.

**[2]** In short, § 1415 establishes a private right of action for disabled children and their parents. It creates no private right of action for school boards or other local educational agencies apart from contesting issues raised in the complaint filed by the parents on behalf of their child.

Our sister circuits are in accord with this interpretation. *See Lawrence Twp. Bd. of Educ*, 417 F.3d at 373 (holding that a township has neither an express nor implied right of action under the IDEA, in suit seeking costs of student's placement from state)*; Cnty. of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002) (per curiam) (holding that Congress did not intend to create a private right of action for a county to remedy a state's alleged failure to comply with the IDEA); *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Kelly E.*, 207 F.3d 931, 935-36 (7th Cir. 2000) (interpreting § 1415(i) to allow a local board of education to seek

judicial review of an education plan, but as not authorizing awards of financial relief from the state); *Andrews v. Ledbetter*, 880 F.2d 1287, 1290 (11th Cir. 1989) (holding that "nothing [in § 1415 of the IDEA's predecessor statute] indicates that Congress intended to grant a[ ] [local education agency] statutory standing to bring suit to compel a state agency to fulfill its statutory duties").

Of particular relevance here, the Sixth Circuit recently held that "the IDEA does not provide School Districts with an express or implied right to compel State Defendants' compliance with § 1415(b)'s procedural safeguards absent an underlying claim that directly involves a disabled child's IEP." *Traverse Bay Area Intermediate Sch. Dist.*, 615 F.3d at 631. In *Traverse Bay*, as here, plaintiff school districts appealed the dismissal of their amended complaint against state defendants, including the Michigan State Office of Administrative Hearings, for their alleged failure to maintain due process protections in accordance with the IDEA. *Id.* at 624. The Sixth Circuit examined whether the IDEA conferred an express or implied right of action permitting the school districts' suit. First, the court held that the IDEA did not *expressly* authorize the school districts' action, because the state defendants' claim did "not involve a 'complaint' that 'relat[es] to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child.' " *Id.* at 628 (quoting 20 U.S.C. § 1415(b)(6)(A)) (latter alteration added). Second, the court analyzed whether such a right to sue could be *implied* from the IDEA. Drawing on the four factors established by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78 (1975), especially Congressional intent, the Sixth Circuit determined that Sections 1412 and 1415 of the IDEA, including the right to sue, were "designed to benefit disabled children and their parents," and the IDEA's procedural safeguards were enacted to resolve disputes about a child's IEP. *Id.* at 629. A local educational agency's suit under the IDEA, therefore, must concern administrative decisions "directly involv[ing] a disabled child's right to a FAPE." *Id.* Additionally, the

Sixth Circuit reasoned that since Congress expressly allocated enforcement authority to parties aggrieved under Section 1415(i)(2)(A) and the Secretary of Education, *see* 20 U.S.C. § 1417, it follows that Congress excluded local educational agencies from enforcing state compliance with the IDEA's statutory provisions, *Traverse Bay*, 615 F.3d at 629-30 (citing *Cnty. of Westchester*, 286 F.3d at 152-53).

**[3]** When we apply these principles to the case at hand, it is quite apparent that the School District lacks statutory standing. Here, the School District seeks to enforce for its own ends the procedural protections intended to safeguard the rights of disabled children and their parents. The School District makes no pretense of relating its suit to the issues raised in the Parents' complaint. To the contrary, the District repeatedly emphasizes that its suit does not involve the IEP of a particular student, but instead challenges the state's "systematic violation of the IDEA." Even if it were challenging only the continuance granted in this particular case, the School District would lack statutory standing to seek enforcement of IDEA's procedural protections.

**[4]** In sum, we join our sister circuits in holding that a school district or other local educational agency has no express or implied private right of civil action under the IDEA to litigate any question aside from the issues raised in the complaint filed by the parents on behalf of their child. In this case, the school district lacks statutory standing to challenge the State of Washington's compliance with the IDEA's procedural protections. The district court correctly dismissed its complaint with prejudice.

Given our resolution of this case, we need not reach any of the other issues presented by the parties.

**AFFIRMED.**